*619 ATTORNEY DISCIPLINARY PROCEEDINGS
BPER CURIAM.*
This matter arises from three sets of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Orscini L. Beard.[1]
UNDERLYING FACTS
96-DB-084
On May 9, 1996, Jacqueline Fay Grinner filed a complaint against respondent with the ODC. The ODC sent a copy of the complaint to respondent by certified mail Respondent failed to reply to the complaint. As a result, the ODC subpoenaed him to appear on September 11, 1996 and to produce his file and financial records in the Grinner matter. Respondent was personally served with the subpoena, but he failed to appear on the scheduled date.
U98-DB-012
Pamela Hynson McDonald retained respondent in 1986 to handle a personal injury matter on her minor daughter’s behalf. Respondent settled the case for $21,500 and, after deducting his attorney’s fee, court costs, and medical expenses, retained the sum of $11,388.37 for deposit in a separate, federally insured interest-bearing bank account in the minor’s name, where it was to remain pending further orders of the court. Respondent refused to account for these funds to his client, and converted the funds to his own use. Moreover, respondent failed to maintain complete records of the sums he held on his client’s behalf for a period of five years following termination of the representation.
98-DB-031

Count I

In November 1996, James and Gloria Thomas paid respondent $250 to handle a bond reduction matter on their son’s behalf. Respondent performed no legal services in connection with the representation, failed to communicate with his client, and failed to account for the fee Mr. and Mrs. Thomas paid or to return the unearned portion of the fee.[2] Additionally, respondent failed to cooperate in the investigation of a complaint filed by Mr. and Mrs. Thomas.

Count II

On November 13, 1996, the East Baton Rouge Parish Grand Jury returned an indictment charging respondent with two counts of theft of a value greater than $100 lobut less than $500, a violation of La. R.S. *620 14:67.[3] State v. Beard, No. 11-96-198 on the docket of the Nineteenth Judicial District Court for the Parish of East Baton Rouge. Respondent pleaded guilty to one count of the indictment, and the remaining count was dismissed on the State’s motion. Thereafter, respondent was sentenced to two years at hard labor, suspended, conditioned upon two years of active, supervised probation with special conditions.
DISCIPLINARY PROCEEDINGS

Formal Charges

Following an investigation, the ODC instituted formal charges against respondent, asserting numerous violations of the Rules of Professional Conduct.[4] After consolidation of the three sets of formal charges, the matter was submitted to a hearing committee.[5]

\ ¿Hearing Committee Recommendation

At the outset, the hearing committee noted that it was previously determined that the failure to cooperate charge in the Grinner matter (96-DB-084) had been proven by clear and convincing evidence. Accordingly, the committee found no need to revisit this matter, except for purposes of determining the appropriate sanction.
As to the McDonald matter (98-DB-012), the committee found that Ms. McDonald retained respondent to represent her daughter, Gabrielle, who was born prematurely in August 1986 after Ms. McDonald fell on the premises of an A & P supermarket.[6] The case was eventually settled for $21,500. Because the settlement involved a minor, court approval of the settlement and the distribution of the proceeds was required. Respondent sought and obtained the court’s permission to disburse $8,600 in attorney’s fees to himself, along with other disbursements to third parties, leaving a total of $11,388.37 in net recovery to the minor child. The trial judge instructed respondent to depos *621 it the funds in a federally insured interest-bearing account on Gabrielle’s behalf, pending further orders of the court. Respondent told Ms. McDonald that she should contact him when she needed money for Gabrielle so that he could obtain the judge’s permission to withdraw the funds. However, it was established by clear and convincing evidence that respondent never placed the funds in a trust account nor in any other account for the benefit of the minor child.[7] Instead, | .^respondent admitted that he used the funds from Gabrielle’s settlement to purchase crack cocaine.[8]
As to the Thomas matter (Count I of 98-DB-031) and the theft conviction (Count II of 98-DB-031), the committee noted that respondent admitted the misconduct charged in the formal charges. The committee also pointed out, however, that no proof was submitted that respondent made restitution in the criminal proceeding, although he was required to pay $1,365.08 in restitution as a condition of probation.
Turning to the issue of an appropriate sanction, the committee found that respondent violated duties owed to his clients, the legal profession, and the public, and that respondent’s misconduct was intentional and caused actual harm to his clients. In the McDonald matter, respondent deprived a “totally disabled, 100% dependent child” of a substantial portion of her net settlement recovery. In the Thomas matter, Mr. and Mrs. Thomas were deprived of the $250 fee they paid until it was belatedly returned, and their son was deprived of prompt, meaningful legal representation. The committee also noted that respondent caused harm to the disciplinary process by his failure to cooperate in the ODC’s investigation.
Considering the ABA’s Standards for Imposing Lawyer Sanctions and this court’s opinion in Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986), the committee concluded the baseline sanction for respondent’s misconduct is disbarment. The committee noted the presence of numerous aggravating factors: prior disciplinary offenses, dishonest or selfish motive, a pattern of misconduct, multiple offenses, obstruction of the disciplinary process, submission of false ^statements and deceptive practices during the disciplinary process, vulnerability of the victim, substantial experience in the practice of law (admitted 1983), and indifference to making restitution. The committee found no mitigating factors, and specifically rejected respondent’s assertion that his drug and alcohol problems should be considered in mitigation.[9] The committee concluded that under the circumstances, there was no reason to deviate from the baseline sanction, and accordingly, recommended that respondent be disbarred from the practice of law.
Neither respondent nor the ODC objected to the hearing committees recommendation.

Disciplinary Board■ Recommendation

The disciplinary board found that respondent has violated duties owed to his *622 clients, the legal system, and the profession, and has engaged in knowing and intentional misconduct. The board agreed with the hearing committee that respondent’s drug and alcohol problems were not shown to substantially mitigate his misconduct, which involves a “laundry list of violations of the Rules of Professional Conduct.” The board concurred in the committee’s assessment of the aggravating factors, and suggested that those factors alone justify a baseline sanction of disbarment. Under the circumstances, the board concluded there is no reason to deviate from this baseline sanction.
Accordingly, the board recommended that respondent be disbarred from the practice of law. The board further recommended that respondent be assessed with all |7costs and expenses of these proceedings, with legal interest to commence running thirty days from the date of finality of the court’s judgment until paid.
Neither respondent nor the ODC objected to the disciplinary board’s recommendation.
DISCUSSION
The record supports the findings of the hearing committee that the ODC proved all of the formal charges by clear and convincing evidence. Turning to the appropriate sanction for respondent’s misconduct, we find respondent has engaged in a pattern of misconduct which convincingly demonstrates his lack of fitness to practice law in this state. Respondent’s conduct in the McDonald matter alone warrants disbarment under Hinrichs, involving as it does the outright theft of funds intended for the support and maintenance of a disabled child in order to support respondent’s crack cocaine habit. Additionally, respondent’s conviction of a theft of telephone services through deceit indicates his lack of moral fitness.
As aggravating factors, we find prior disciplinary offenses, dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary process, false statements and deceptive practices during the disciplinary process, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, substantial experience in the practice of law, and indifference to making restitution. No mitigating factors are supported by the record.
We conclude disbarment is the appropriate sanction under these facts. Accordingly, we will accept the disciplinary board’s recommendation and disbar respondent from the practice of law in Louisiana.
IsDECREE
Upon review of the findings and recommendation of the disciplinary board, and considering the record, it is ordered that the name of Orscini L. Beard be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Victory, J., not on panel. Rule IV, Part II, § 3.

. In 1989, respondent pleaded guilty to making a false statement under penalty of perjury in a bankruptcy proceeding and was sentenced to serve 27 months in federal prison. After respondent’s sentence was affirmed on appeal, see United States v. Beard, 913 F.2d 193 (5th Cir.1990), this court placed respondent on interim suspension and ordered that necessary disciplinary proceedings be instituted. Disciplinary Counsel v. Beard, 570 So.2d 450 (La.1990). Thereafter, respondent was suspended from the practice of law for three years, retroactive to the date of his interim suspension. In re: Beard, 609 So.2d 245 (La.1992).
In 1993, respondent petitioned for reinstatement to the practice of law. On October 30, 1995, this court reinstated respondent with a two-year period of probation, subject to the fulfillment of specified conditions. In re: Beard, 94-2824 (La. 10/30/95), 661 So.2d 982. On January 29, 1996, the ODC moved to revoke respondent’s conditional reinstatement because of his non-compliance with the conditions imposed upon him. This court granted the ODC's motion and revoked respondent’s conditional reinstatement. In re: Beard, 94-2824 (La. 12/13/96), 684 So.2d 398. Accordingly, respondent is not eligible to practice law at this time.

. After the ODC commenced its investigation, respondent paid restitution to Mr. and Mrs. Thomas of $250.

. The indictment alleges that respondent “committed theft of a cellular telephone and commissions” from Cellular Sales and Services Company (Count I) and from Advantage Communications Company (Count II). Respondent schemed to defraud the cellular telephone companies by offering for credit verification purposes his son's social security number, driver’s license number, and date of birth. Through his deception, respondent was able to obtain cellular telephones and service and incurred bills and charges that remain unpaid.

. Collectively, the three sets of formal charges allege violations of Rules 1.3 (failure to act with diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5 (fee arrangements), 1.15 (safekeeping property of clients or third persons), 4.1(a) (making a false statement of material fact or law to a third person), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (engaging in conduct prejudicial to the administration of justice), and 8.4(g) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct.

. The charges in 96-DB-084 were filed on November 5, 1996. Respondent failed to answer or otherwise respond to the formal charges, and the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence. Both the hearing committee and the disciplinary board found that respondent violated the professional rules as charged; that respondent violated duties owed to the profession and the disciplinary system; and that he knowingly caused injury to the system of lawyer regulation by failing to respond to the complaint filed by his former client. After the disciplinary board’s recommendation was filed in this court, the ODC moved to have the matter remanded for consolidation with the formal charges in 98-DB-012, which were filed on February 17, 1998, and with the formal charges in 98-DB-031, which were filed on May 18, 1998. On June 30, 1998, this court remanded 96-DB-084 to the disciplinary board for consolidation with the other pending matters.

. Complications arose during Gabrielle’s premature birth, and she is now profoundly handicapped. She is almost exclusively confined to a tilt-back wheelchair and requires around-the-clock care. One of the committee *621 members described Gabrielle as "probably as helpless as a human being as I’ve ever seen.”

. Ms. McDonald testified that she could not recall the exact amounts involved, but thought that respondent had given her between $2,000 and $3,000 over the years, all of which she believed was coming from the registry of the court but which respondent actually took from his personal account. No annual accountings were ever provided by respondent to Ms. McDonald.

. Respondent admitted this fact for the first time at the hearing of this matter. In his answer to the formal charges and in all other pleadings directed to the McDonald matter, respondent specifically denied that he converted any of Gabrielle’s funds.

.The committee found that respondent’s "repetitious misconduct” is not excused by the drug and alcohol problems he claimed to have had between 1979 and December 1996. In fact, the committee stated that "[r]espon-dent’s testimony that he has used alcohol and drugs (on and off) for over two decades suggests he has consistently misled the court, even with regard to his fitness to be a practicing attorney when he initially applied for admission to the Bar and throughout years of disciplinary proceedings.”